IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **J&J SPORTS PRODUCTIONS, INC.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | Civil Action No.: TDC-17-1825 |
| | * | |
| **EL TAPATIO, INC.,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | ***** | |

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses Plaintiff's Motion for Default Judgment (ECF No. 13) (the "Motion"). Plaintiff J&J Sports Productions, Inc. ("Plaintiff") filed a complaint against Defendants El Tapatio, Inc., Beronica Navarro, and Ruben Navarro Mendez (collectively "Defendants"), alleging Defendants violated several federal statutes, including The Communications Act of 1934 and The Cable & Television Consumer Protection and Competition Act of 1992. ECF No. 1. Pursuant to 28 U.S.C. Section 636 and Local Rules 301 and 302, the Honorable Theodore D. Chuang referred this matter to the undersigned for the making of a Report and Recommendation concerning default judgment and/or damages. For the reasons stated herein, I recommend the Court **GRANT** Plaintiff's Motion and award Plaintiff $8,200.

**I.  Factual Background**

On June 30, 2017, Plaintiff commenced this action against Defendants, alleging that Defendants violated provisions of the Sections 605 of the Federal Communications Act of 1934

1

and 553 of The Cable & Television Consumer Protection and Competition Act of 1992. ECF No.1, pp. 2–7; 47 U.S.C. § 553; 47 U.S.C. § 605. The Complaint states that Plaintiff, an international distributor of sports and entertainment programming, held "the exclusive nationwide commercial distribution (closed-circuit) right to the '*Honor + Glory' Saul Alvarez v. Erislandy Lara Championship Fight Program*" (the "Program"), which telecast nationwide on July 12, 2014. ECF No. 1 ¶ 15. Plaintiff entered into various sublicensing agreements with commercial entities that permitted the businesses to "publicly exhibit the Program within their respective commercial establishments in the hospitality industry." *Id.* at ¶ 16.

Patrick Hsu, an investigator employed by Plaintiff, declared in a sworn affidavit that on July 12, 2014, he entered the establishment of El Tapatio, Inc. (t/a El Tapatio Mexican Restaurant) and observed the establishment showing the Program on four television screens. ECF No. 13-9. Mr. Hsu stated that the capacity of the establishment was approximately 100 people, with the establishment being at capacity at the time he was present. *Id.* Mr. Hsu also declared that he paid a cover charge of ten (10) dollars to enter the establishment. *Id.*

Based on Mr. Hsu's investigation, Plaintiff alleges that Defendants violated provisions of the Sections 605 and 553 when it showed the Program without authorization. ECF No.1, pp. 2–7; 47 U.S.C. § 553; 47 U.S.C. § 605. Because Defendants did not file an answer to Plaintiff's Complaint, Plaintiff moved for and the Clerk entered a default on January 16, 2018. ECF No. 12; s*ee* Fed. R. Civ. P. 55(a). Plaintiff now seeks judgment by default to be entered in its favor and against Defendants for the sum of Thirty-Eight Thousand, One Hundred and Ninety-Four Dollars, $38,194.00, along with costs and post-judgment interest. ECF No. 13.

**II.     Legal Background**

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). In considering a motion for default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citation omitted); *see also* Fed. R. Civ. P 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."). However, the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (citations omitted). The Court "must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought." *Id.*; 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688.1 (4th ed. 2017) ("Liability is not deemed established simply because of the default. . . [and] the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

The Fourth Circuit has repeatedly expressed a "strong policy that cases be decided on the merits." *See, e.g.*, *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993); *Colleton Prepatory Acad., Inc. v. Hoover Univ., Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). However, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Still, "acceptance of [the] undisputed facts does not necessarily entitle [the non-defaulting party] to the relief sought." *Ryan*, 253 F.3d at 780–81. If the plaintiff establishes liability, the

Court then turns to the determination of damages. *CGI Finance, Inc. v. Johnson*, No. ELH-12-1895, 2013 WL 1192353, at *1 (D. Md. Mar. 21, 2013). In determining damages, the Court cannot accept Plaintiff's factual allegations as true and must make an independent determination. *See Lawbaugh*, 359 F. Supp. 2d at 422. Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered as a result of a party's default, stating that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). While the Court may conduct an evidentiary hearing to determine damages, it is not required to do so "if the record supports the damages requested." *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (citing *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv00004, 2009 WL 1872535, at *2). The Court may rely instead on affidavits or documentary evidence of record to determine the appropriate sum. *See, e.g., Monge*, 751 F. Supp. 2d at 795 (citing cases in which damages were awarded after a default judgment and without a hearing, based on affidavits, printouts, invoices, or other documentary evidence).

### III. Discussion

**A. Defendants are Liable for Violating Either Section 553 or Section 605.**

In the Complaint and in its Motion, Plaintiff seeks to enforce both "sections 605 and 553 of 47 U.S.C., which are provisions of the Federal Cable Act that address different modalities of so-called 'cable theft.'" *J&J Sports Prods., Inc. v. MayrealII, LLC*, 849 F. Supp. 2d 586, 588 (D. Md. 2012). Section 605 prohibits the "unauthorized interception or receipt of certain 'radio' communications, including at least 'digital satellite television transmission,'" while section 553 prohibits the "unauthorized interception or receipt of certain cable communications.'" *J&J*

4

*Sports Prods., Inc. v. Intipuqueno, LLC*, No. DKC-15-1325, 2016 WL 1752894, at *2 (D. Md. May 3, 2016) (citing *MayrealII, LLC*, 849 F. Supp. 2d at 588).

In its Complaint, Plaintiff does not specify how Defendants intercepted the Program. That omission is not fatal as "[t]he complaint need not specify the precise method of interception, as pleading in the alternative is permitted" at this stage. *Joe Hand Promotions, Inc. v. Md. Food & Entm't, LLC*, Civil No. CCB-11-3272, 2012 WL 5879127, at *4 (D. Md. Nov. 19, 2012). Instead, Plaintiff can prove that Defendants violated either Section 553 or Section 605 by showing that Defendants "intercepted and displayed the Program at its establishment, without authorization from [Plaintiff], on a particular date and at a particular time." *Id.*

As Plaintiff concedes, courts in this district have determined that Plaintiff "cannot recover under both [§§ 605 and 553] for the same conduct, so courts typically grant recovery under only § 605, as it provides for greater recovery." ECF No. 13-5, p. 5 (citing *J&J Sports Prods., Inc. v. Melgar*, No. PJM 11-3339, 2012 WL 1852270, at *2 (D. Md. May 15, 2012); *see also J&J Sports Prods., Inc. v. Royster*, No. RWT-11-1597, 2014 WL 992779, at *2 (D. Md. Mar. 13, 2014). Accordingly, Plaintiff seeks recovery under section 605.

I am persuaded that Plaintiff has proven a violation of Section 605. Plaintiff has alleged, via Mr. Hsu's affidavit, that Defendants displayed the Program at its establishment on July 12, 2014, at or around 11:30 p.m. Taking the factual allegations as true, I am persuaded that Plaintiff has proven that Defendants "intercepted and displayed the program at its establishment" "on a particular date and at a particular time." *Joe Hand*, 2012 WL 5879127, at *4. Plaintiff alleges that Defendants showed the Program "without authorization." Pl.'s Compl. 3.; *Joe Hand*, 2012 WL 5879127, at *4. As such, I am persuaded that Plaintiff has proven a violation of 47 U.S.C. § 605.

B. Damages

1. **Plaintiff Should Recover $1,400 in Statutory Damages**

While actual damages are available under Section 605, Plaintiff has requested statutory damages. In awarding statutory damages, this Court has discretion to award Plaintiff between "$1,000 and $10,000 for each unauthorized reception and publication of a radio communication by [Defendant] in violation of section 605(a)." *J&J Sports Prods., Inc. v. Quattroche*, No. WMN-09-3420, 2010 WL 2302353, at *2 (D. Md. June 7, 2010); 47 U.S.C. § 605(e)(3)(C)(i)(II). Courts in this Circuit have determined the proper measure of damages by either: 1) multiplying a fee per person by "the number of patrons observed in the defendant's establishment at the time the program was shown;" 2) multiplying a fee per person by the maximum occupancy of the establishment; or 3) awarding a flat sum per violation. *Id*.

This Court has utilized the first approach where the defendant charged patrons a "cover charge." *See, e.g., J&J Sports Prods., Inc. v. Rumors*, No. CCB-14-2046, 2014 WL 6675646, at *3 (D. Md. Nov. 21, 2014); *Quattroche*, 2010 WL 2302353, at *2. However, Plaintiff's reliance on the "principle of proportionality" standard cited to in *Quattrocche*, as applied to statutory damages, is misplaced. ECF No. 13-5, p. 7. Instead, the court found that plaintiff was entitled to the statutory minimum, as "the evidence [plaintiff presented] shows that Defendants realized a profit of $305.00." 2010 WL 2302353, at *2. Indeed, the "principle of proportionality" standard cited to in *Quattrocche* was applied to the awarding of enhanced damages, as discussed herein below. *Id.* at *3.

In Mr. Hsu's affidavit, he attests that Defendants' establishment was able to accommodate a capacity of 100 people, and was full at the time of his investigation. ECF No. 13-9. Mr. Hsu further attests that he was required to pay a cover charge of $10 upon entry. *Id.*

In taking this allegation as true, the Court finds that in applying the first approach, Plaintiff would be entitled to $1,000 in statutory damages. However, as Plaintiff correctly points out, this Court has utilized the third approach—the flat sum—where a plaintiff has provided "evidence" of the amount "the Defendant[] would have had to pay . . . to legally obtain and exhibit the broadcast." *Royster*, 2014 WL 992779, at *4. While Plaintiff did provide a rate card which might show the amount Defendants would have had to pay to show the program, Plaintiff did not attest, under penalty of perjury, that the rate card provided was related to the contract Plaintiff entered into when it purchased the distribution rights to the Program. Rate Card for the Program, ECF No. 13-11 (the "Rate Card"). Given Plaintiff's failure to provide evidence with sufficient indicia of trustworthiness, I suggest this Court award Plaintiff the amount of $1,000 calculated as the profits realized by Defendants.[1]

## 2. The Statutory Damages Should be Multiplied by Five

Plaintiff has also requested enhanced damages under Section 605 which authorizes "the court in its discretion . . . [to] increase the award of damages . . . by an amount of not more than $100,000 for each violation" of the provision. 47 U.S.C. § 605(e)(3)(C)(ii). "In determining whether enhanced damages are warranted, other courts in this Circuit have looked to several factors, including: 1) evidence of willfulness; 2) repeated violations over an extended period of time; 3) substantial unlawful monetary gains; 4) advertising the broadcast; and 5) charging an admission fee or charging premiums for food and drinks." *Quattrocche*, 2010 WL 2302353, at *2 (citation omitted). Even when "there are no allegations of repeat behavior or other factors

---

[1] Should the Court disagree with the undersigned's assessment of the evidence that should be considered it might award Plaintiff statutory damages equal to the amount Defendants would have paid to legally obtain the right to show the Program. Mr. Hsu estimated that the maximum capacity of the establishment was 100 people. Plaintiff has not provided any evidence that the number of patrons present was more than the estimated 100. According to the Rate Card, an establishment that holds 1-100 people would have been required to pay $1,400 to show the Program. ECF No. 13-11.

7

suggesting egregious willfulness, [c]ourts generally award around three to six times the statutory damages award in enhanced damages." *Id.*

Here, there is evidence of willfulness—Defendants were playing the Program on their television screens without having obtained authorization to do so. Indeed, "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *J&J Sports Prods., Inc. v. Castro Corp.*, No. 11-CV-00188-AW, 2011 WL 5244440, at *4 (D. Md. Nov. 1, 2011). Additionally, while Plaintiff does not claim that Defendants engaged in repeated violations, advertised the Program, or charged premiums for food and drinks during the broadcast, Plaintiff has presented evidence that Defendants charged an admission fee. Given that all four of Defendants's televisions were showing the Program, and that the record suggests that there were one hundred patrons present (approximately meeting the establishment's capacity), I believe that there is evidence of egregious willfulness.

If the Court is persuaded that evidence of egregious willfulness is present, then enhancement is warranted. Such an enhancement would not only help compensate Plaintiff for additional lost profits which are difficult to calculate,[2] but it would also compensate Plaintiff for the additional time and money spent to discover and document Defendants' violation of Section 605.[3] Finally, an enhancement would act as a deterrent for future violations of Section 605 by encouraging establishments to pay for the legitimate rights to broadcast programs. I recommend

---

[2] As Plaintiff points out, when unauthorized establishments show programs that they do not have the right to show, establishments that have purchased the rights to these programs lose customers. This may deter legitimate businesses from purchasing future programs and rob plaintiffs from obtaining future customers.

[3] In this case, Plaintiff had to hire a private investigator, file a lawsuit, and pursue the present motion.

multiplying the statutory award by five times would be appropriate, resulting in an award of $5,000 in enhanced damages.[4]

### 3. Attorney's Fees Should be Granted

Plaintiff seeks to recover its attorneys' fees and relevant costs incurred pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) ("The Court. . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."). Having found that Defendants violated § 605(a), I recommend the Court find that Plaintiff is an "aggrieved party" who prevailed and is entitled to recover its costs, including reasonable attorneys' fees. In calculating an award of attorney's fees, courts begin with the lodestar calculation. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). The lodestar figure equals the number of reasonable hours expended by counsel multiplied by a reasonable hourly rate, which the Court determines by examining the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*See id.* at 243–44 (internal quotation marks omitted) (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the factors specified by *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974))). The Court also relies upon the Rules and

---

[4] In accordance with footnote 1, if the Court should find that Plaintiff is entitled to statutory damages totaling $1,400 (as shown on the Rate Card), I recommend that the Court likewise adjust the calculated enhanced damages to $7,000 (statutory damages times five).

9

Guidelines for Determining Attorneys' Fees in Certain Cases (the "Guidelines"), which are located in Appendix B of the Local Rules of the U.S. District Court for the District of Maryland.

"The party seeking fees bears the burden of proving the reasonableness of the amount sought." *J&J Sports Prods., Inc. v. Mumford*, No. DKC-10-2967, 2013 WL 210623, at *2 (D. Md. Jan. 17, 2013) (citing *Robinson*, 560 F.3d at 243–44). Plaintiff's counsel has submitted a detailed affidavit (ECF No. 13-7) and a Statement of Costs and Fees (ECF No. 13-8) which reflect total attorneys' fees and costs incurred of $2,200. Having reviewed Plaintiff counsel's affidavit setting forth each attorney's relevant experience, I recommend the Court find that the hourly rates charged are presumptively reasonable pursuant to Appendix B of the Local Rules (D. Md. July 1, 2016).[5] Likewise, in its review of Plaintiff's Statement of Costs and Fees, I recommend the Court find that the amount requested is reasonable and supported by appropriate attachments. Accordingly, I recommend that Plaintiff be awarded $2,200 in attorneys' fees and costs.

---

[5] Appendix B of the Local Rules provides, in relevant part, payment according to the years of experience: "Lawyers admitted to the bar for less than five (5) years: $150-225. . . Lawyers admitted to the bar for twenty (20) years or more: $300-475." Loc. R. App. B (D. Md. July 1, 2016). Accordingly, Richard Kind's hourly rate of $350, for an attorney with 40 years of experience, and Ryan Kind's hourly rate of $200, for an attorney with 2 years of experience, are well within the range prescribed.

**IV.     Conclusion**

For the foregoing reasons, it is my recommendation that:

1. The Court **GRANT** Plaintiff's Motion for Default Judgment (ECF No. 13) against Defendant; and

2. The Court award Plaintiff a total of $8,200 for Defendants' violations of Section 605 (consisting of $1,000 in statutory damages, $5,000 in enhanced damages, and $2,200 in attorneys' fees and costs).

June 5, 2018                              /s/
                                    Charles B. Day
                                    United States Magistrate Judge

CBD/gbc